IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **LEE RUSHING SMITH,** ) | |
| ) | |
| **Plaintiff,** ) | |
| v. ) | Case No. CIV-19-254-JFH-SPS |
| ) | |
| **ANDREW M. SAUL,** ) | |
| **Commissioner of the Social** ) | |
| **Security Administration,** ) | |
| ) | |
| **Defendant.** ) | |

### REPORT AND RECOMMENDATION

The claimant Lee Rushing Smith requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision should be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations implement a

five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: (1) whether the decision was supported by substantial evidence, and (2) whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was fifty-four years old at the time of the most recent administrative hearing (Tr. 827). He completed the twelfth grade and has vocational training in welding (Tr. 44-45, 267-268). The claimant alleges inability to work since August 11, 2009, due to posttraumatic stress disorder and peripheral neuropathy (Tr. 49, 267).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, on March 30, 2012. His application was denied. ALJ Edward L. Thompson conducted an administrative hearing and found that the claimant was not disabled in a written decision dated March 17, 2014 (Tr. 19-34). The Appeals Council denied review, but this Court reversed in Case No. CIV-15-396-SPS and remanded with instructions to properly consider the evidence in the record related to the claimant's peripheral neuropathy as well as the opinion of a consultative examiner (Tr. 883-896). On remand, ALJ Edward L. Thompson held a second administrative hearing and again determined that the claimant was not disabled in a written decision dated April 10, 2019 (Tr. 760-785). The Appeals Council again denied review, so ALJ Thompson's April 2019 written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that, from the alleged onset date of disability of August 11, 2009 through the date last insured of December 31, 2014, the claimant could perform medium work as defined in 20 C.F.R. § 416.967(c), except he could not walk on uneven surfaces, or lift/carry while on stairs (Tr. 768). Additionally, the ALJ found that the claimant could understand, remember, and carry out simple and some complex instructions, with "simple" meaning unskilled entry-level work with an SVP of one or two, "some complex" meaning semi-skilled work with an SVP of three or four and skilled work with an SVP of five, but excluding higher-skilled work with an SVP of six through nine. He further found the claimant could make judgments on "simple and some complex" work-related decisions, with the same SVP findings on this subject. Finally, he found the claimant was able to respond appropriately to supervisors and co-workers, occasionally interact with the general public, and deal with changes in a routine work setting, and that he had no other physical or mental limitations or restrictions aside from those addressed (Tr. 768). The ALJ then relied on the SSA's expedited process to make no findings as to the claimant's past relevant work and proceeded to step five to find there was work the claimant could perform, *i. e.*, janitor, hand packager, and stocker (Tr. 784-785).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly account for his subjective complaints and pain, and (ii) improperly rejected the opinion of his consultative

examiner, Dr. Palacio-Holman. The undersigned Magistrate Judge finds these contentions unpersuasive for the following reasons.

ALJ Thompson found the claimant had the severe impairments of peripheral neuropathy in the lower extremities that was mild to moderate and mixed sensory motor axonal degenerating in type with distal more than proximal, degenerative joint disease, bilateral shoulders, depression, anxiety, post-traumatic stress disorder (PTSD), alcohol abuse, and a substance addiction disorder (Tr. 764). The claimant was largely treated during the relevant time period at the Jack C. Montgomery Veterans Affairs Medical Center ("VAMC") by nurse practitioner Vickie Holland for his physical impairments and by Drs. Trost, Ford, and Locke for his mental impairments (Tr. 336-644, 658-756).

On July 7, 2011, Dr. Thomas Hoffman performed a mental status examination in connection with the claimant's compensation and pension examination (Tr. 477-86). Dr. Hoffman noted the claimant had tense psychomotor activity; spontaneous, but impoverished speech; an attentive, but suspicious and guarded attitude; a constricted affect; and an anxious mood (Tr. 480-81). He diagnosed the claimant with posttraumatic stress disorder ("PTSD") and alcohol abuse, and opined that the claimant's alcohol abuse had a negative impact on his social and occupational functioning (Tr. 485). Dr. Hoffman further opined that the claimant's PTSD reduced his reliability and productivity but did not preclude gainful employment (Tr. 485-86).

Dr. Shalom Palacio-Holman performed a consultative mental status examination on June 8, 2012 (Tr. 646-49). She noted the claimant was relaxed and oriented with normal speech and a logical, goal-directed thought process (Tr. 647). The claimant's mood was

normal, but his affect was flat (Tr. 647). Dr. Palacio-Holman indicated the claimant had average intelligence, an average fund of information, and demonstrated some ability for abstract thought (Tr. 647). She stated his attention, concentration, and memory were intact, and that he had good judgment, insight, and impulse control (Tr. 647). The claimant was able to interpret common proverbs but could not discuss leisure reading or current events (Tr. 647). Dr. Palacio-Holman opined that the claimant had a poor prognosis and his overall ability to adjust to stress was poor, and that he would likely decompensate with continued stress based on his report of repeated episodes of decompensation (Tr. 648). She concluded that the claimant had psychological, cognitive, and emotional deficits that would significantly interfere with his ability to perform occupationally (Tr. 648). More specifically, she concluded that the claimant could not understand, remember, and carry out both simple and complex instructions within a work setting; could not adapt, persist, and keep pace within a work setting; and did not have the social ability to interact with the public, co-workers, and supervisors (Tr. 648).

On November 15, 2013, the claimant presented paperwork to Dr. Locke regarding a disability claim for his mental impairments (Tr. 742). Dr. Locke opined that the claimant's mental impairments were not disabling and filled out the paperwork accordingly (Tr. 742). Dr. Locke recommended the claimant resume mental health care, but the claimant stated he could not do so due to work and distance (Tr. 742).

As to the claimant's physical impairments, he established care with nurse practitioner Vickie Holland on February 11, 2010 (Tr. 609-12). At this initial appointment, the claimant reported insomnia, cramps in his legs and shoulders, low back pain, and a

history of numbness in his hands, hypertension, night sweats, depression, and alcohol abuse (Tr. 609, 613). Ms. Holland's physical exam was normal apart from the presence of a lipoma, bilateral breast enlargement, and an enlarged liver (Tr. 611). She provided the claimant with bilateral night wrist splints for his hand numbness and prescribed medication for hypertension and hypothyroidism (Tr. 612). She also strongly advised the claimant to stop all alcohol consumption and ordered an ultrasound of his liver, the results of which showed probable fatty infiltration of the liver (Tr. 369). At a follow-up appointment on March 2, 2010, the claimant reported the wrist splints relieved the numbness in his hands (Tr. 575). On July 18, 2011, the claimant reported numbness in his legs and cramping in his calves (Tr. 421-24). On examination, Ms. Holland noted the claimant's pulses and deep tendon reflexes were normal, but that he had muscle rigidity and loss of sensation between his ankles and knees (Tr. 421). She ordered an electromyography test, which revealed peripheral neuropathy in both legs (Tr. 419-420). Thereafter, Ms. Holland treated the claimant's pain with medication (Tr. 412-13, 417, 726, 746).

On June 23, 2012, Dr. Traci Carney performed a consultative physical examination (Tr. 651-57). Her exam of the claimant's legs revealed onychomycosis, but no point tenderness or swelling, adequate peripheral pulses, normal deep tendon reflexes, and no sensory or motor deficit (Tr. 653). Dr. Carney found the claimant had a safe, stable gait, did not ambulate with an assistive device, and had no identifiable muscle atrophy (Tr. 653). Her assessment included, *inter alia*, peripheral neuropathy, long term history of alcohol abuse, posttraumatic stress disorder, and anxiety (Tr. 653).

State agency physicians determined that the claimant could perform medium work with the postural limitations of occasional crawling and climbing ladders, ropes or scaffolds; and the manipulative limitation of occasional overhead reaching bilaterally (Tr. 93-95, 107-109). As to his mental impairments, state reviewing physicians found that the claimant could perform simple and some complex work tasks for a sustained period of time and at an appropriate pace with only limited contact with the general public (Tr. 97, 109-110).

At the first administrative hearing, which was conducted during the relevant alleged period of disability, the claimant testified that his neuropathy causes a daily, painful, needle-like sensation on the bottom of his feet (Tr. 49-50). He also testified that his hands cramp "just about every day" (Tr. 51). As to his legs, the claimant stated that he experiences swelling from his calves to his ankles which he relieves by elevating his feet for approximately an hour (Tr. 53-54). The claimant further testified he is able to tolerate crowds only once in a while because he does not like people walking up behind him (Tr. 61). As to specific limitations, the claimant stated he could sit for forty-five minutes before needing to stand or lie down, stand for thirty to forty-five minutes, walk approximately one block, and lift up to ten pounds (Tr. 62-63). At the most recent administrative hearing, the claimant largely testified that the symptoms he had described at the previous hearing had worsened (Tr. 828-835). Additionally, the ALJ called Dr. Steven Goldstein to testify as to the claimant's impairments (Tr. 839-840). Dr. Goldstein, *inter alia*, characterized the claimant's peripheral neuropathy as severe, that it would cause

the claimant to have difficulty walking on uneven surfaces, and that while he could lift/carry a medium weight load he could not do so on an uneven surface or stairs (Tr. 841).

In his written opinion at step two, the ALJ noted the claimant alleged he had not worked since his alleged onset date of August 11, 2009, but that a 2013 treatment note remarked that the claimant turned down long-term PTSD treatment "due to working" (Tr. 763). He thus found the claimant worked after his alleged onset date but that there was insufficient evidence to determine whether it met substantial gainful activity (Tr. 763). At step four, the ALJ thoroughly summarized the claimant's testimony from both administrative hearings, as well as the medical evidence in the record (Tr. 768-783). The ALJ contrasted the claimant's hearing testimony with submitted Adult Function Reports in which his level of functions appeared to be greater than described, including painting two rooms over the course of two months, taking care of his stepson, getting out three times a week, and spending time with others, including family (Tr. 770). He then stated that the claimant's testimony as to his limitations was not borne out by the evidence from the VA or Dr. Carney's consultative examination (Tr. 770). He then reprinted verbatim a large portion of Dr. Carney's assessment, finding it supported by the evidence and entitled to great weight, noting there were no reports of problems with the claimant's gait nor consistent findings related to swelling in the claimant's lower extremities (Tr. 770-772). The ALJ again noted the claimant rejected long-term PTSD treatment due to distance and working (Tr. 772). As to Dr. Palacio-Holman's opinion, the ALJ concluded that her report, which stated that the claimant had average intelligence; some ability for abstract thought; intact attention, concentration, and memory; good judgment, insight, and impulse control;

as well as the recommendation for vocational rehabilitation, to be inconsistent with her prognosis (Tr. 776). Furthermore, he found that her opinions were inconsistent with her own report, as well as a 2011 VA psychologist opinion that his PTSD did not preclude gainful employment and the opinions of the state reviewing physicians (Tr. 485, 776-777). Likewise, he noted that although she is a specialist, Dr. Palacio-Holman did not have a treating relationship with the claimant and performed no psychological testing, and he therefore declined to impose any restrictions she suggested (Tr. 773-777). He then assigned great weight to the opinions of the state reviewing physicians, both of whom noted the inconsistencies in Dr. Palacio-Holman's report (Tr. 777-779). The ALJ then further adopted the limitations suggested by Dr. Goldstein at the second administrative hearing, giving his opinion great weight (Tr. 780). Finally, the ALJ found the claimant's statements were "not entirely consistent with the medical evidence and other evidence in the record," specifically due to unremarkable clinical findings on exam, normal mental status findings, and diagnostic testing and conservative care (Tr. 783). Furthermore, he noted the state reviewing physician opinions had found that the claimant's allegations supporting his mental impairments were only partially credible and agreed with their assessment (Tr. 783).

The claimant first contends that the ALJ erred in analyzing his subjective statements because he improperly found the claimant was working when he was not and improperly relied on rescinded Soc. Sec. Rul. 96-7p instead of the applicable Soc. Sec. Rul. 16-3p. The Commissioner uses a two-step process to evaluate a claimant's subjective statements of pain or other symptoms:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second . . . we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . .

Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *3 (October 25, 2017).[2] Tenth Circuit precedent is in accord with the Commissioner's regulations but characterizes the evaluation as a three-part test. *See e. g., Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1166-67 (10th Cir. 2012), citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987).[3] As part of the symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any other measures the claimant uses or has used to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *See* Soc. Sec. Rul. 16-3p, 2017

---

[2] SSR 16-3p is applicable for decisions on or after March 28, 2016, and superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996). *See* SSR 16-3p, 2017 WL 5180304, at *1. SSR 16-3p eliminated the use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of [a claimant's] character." *Id.* at *2.

[3] Analyses under SSR 16-3p and *Luna* are substantially similar and require the ALJ to consider the degree to which a claimant's subjective symptoms are consistent with the evidence. *See, e. g., Paulek v. Colvin*, 662 Fed. Appx. 588, 593-4 (10th Cir. 2016) (finding SSR 16-3p "comports" with *Luna)* and *Brownrigg v. Berryhill,* 688 Fed. Appx. 542, 545-46 (10th Cir. 2017) (finding the factors to consider in evaluating intensity, persistence, and limiting effects of a claimant's symptoms in 16-3p are similar to those set forth in *Luna*). This Court agrees that Tenth Circuit credibility analysis decisions remain precedential in symptom analyses pursuant to SSR 16-3p.

WL 5180304, at *7-8. An ALJ's symptom evaluation is entitled to deference unless the Court finds that the ALJ misread the medical evidence as a whole. *See Casias,* 933 F.2d at 801. An ALJ's findings regarding a claimant's symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. The ALJ is not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but simply "recit[ing] the factors" is insufficient. *See* Soc. Sec. Rul. 16–3p, 2017 WL 5180304 at *10.

The ALJ's written opinion is summarized above, and the undersigned Magistrate Judge first notes that, contrary to the claimant's assertion, the ALJ properly cited Soc. Sec. Rul. 16-3p as the applicable standard. The undersigned Magistrate Judge also notes that the ALJ concluded that "the claimant's statements concerning the intensity, persistence, and limiting effects are not entirely consistent with the medical evidence and other evidence in the record," but that he provided numerous reasons for reaching this conclusion (Tr. 768-783). The inconsistencies noted include: (i) the contrast between the claimant's testimony at the administrative hearings and his own Adult Function Reports; (ii) the claimant's refusal of treatment due to working, despite alleging he could not work during that same time; (iii) the claimant's daily activities; (iv) the VA treating psychologist who found the claimant's mental impairment did not preclude gainful activity; and (v) the lack of supporting evidence for the claimant's alleged impairments. The claimant alleges that he was not working, despite the note in the medical record, and that there is no support (such as employment wage records) for this conclusion. However, this was a part of the

claimant's record and, more importantly, not the sole or main reason for finding the claimant's subjective statements inconsistent with the record. Indeed, the ALJ spent considerable time pointing out the inconsistencies in his lengthy opinion. Thus, the ALJ linked his subjective statement analysis to the evidence and provided specific reasons for the determination. There is no indication here that the ALJ misread the claimant's medical evidence taken as a whole, and his evaluation of the claimant's subjective statements is therefore entitled to deference. *See Casias*, 933 F.2d at 801.

As part of his argument related to his subjective statements, the claimant also contends that the ALJ again failed to properly analyze Dr. Palacio-Holman's consultative opinion. The Court finds that the ALJ did not, however, commit any error in his analysis. An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors are: (i) the length of treatment relationship and frequency of examination; (ii) nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or

contradict the opinion. *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). Here, the ALJ succinctly summarized Dr. Palacio-Holman's conclusions and rejected them because they were inconsistent with the body of her report, specifically laying out what those inconsistencies were, and further addressing each of the *Watkins* factors in turn. The Court finds that the ALJ considered her opinion in accordance with the appropriate standards and properly concluded it was not entitled to controlling weight. In fact, the ALJ noted and fully discussed the findings of all of the claimant's various treating, consultative, and reviewing physicians, including Dr. Palacio-Holman, whose opinion did not even appear to be supported by her own examination as discussed by the ALJ. The ALJ thus did not commit error in failing to include any additional limitations imposed by Dr. Palacio-Holman in the claimant's RFC. *See, e. g., Best-Willie v. Colvin,* 514 Fed. Appx. 728, 737 (10th Cir. 2013) ("Having reasonably discounted the opinions of Drs. Hall and Charlat, the ALJ did not err in failing to include additional limitations in her RFC assessment."). The ALJ's opinion was therefore sufficiently clear for the Court to determine the weight assigned these opinions, as well as sufficient reasons for the weight assigned. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions. Nothing more was required in this case.") [internal citation omitted].

The ALJ specifically noted every medical record available in this case, gave reasons for his RFC determination, and ultimately found that the claimant was not disabled. *See Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive

discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). This was "well within the province of the ALJ." *Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir.2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), *citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946. The essence of the claimant's appeal is that the Court should reweigh the evidence and reach a different result, which the undersigned Magistrate Judge simply may not do. *See, e. g., Casias*, 933 F.2d at 800. Accordingly, the decision of the Commissioner should be affirmed.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore legally correct. The undersigned Magistrate Judge thus RECOMMENDS that the Court AFFIRM the decision of the Commissioner. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 23rd day of February, 2021.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**